UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00292-RJC

| | |
|---|---|
| TAVON DANTE COLE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Social Security Brief, (Doc. No. 6), Defendant's Brief, (Doc. No. 8), and Plaintiff's Reply Brief, (Doc. No. 9).[1] Having fully considered the written arguments, administrative record, and applicable authority, the Commissioner's Decision is **AFFIRMED**.

I.  **BACKGROUND**

The Court adopts the procedural history as stated in the parties' briefs and discusses relevant portions below. Plaintiff Tavon Dante Cole filed the present action on May 16, 2023. (Doc. No. 1). Plaintiff argues the Court should overturn the ALJ's finding of no disability on three grounds:

- The ALJ's definition of "low stress work setting" is insufficiently clear to permit judicial review of Plaintiff's Residual Functional Capacity

---

[1] Following amendments to the Supplemental Rules for Social Security Actions, 42 U.S.C. § 405(g), and to Local Civil Rule 7.2, the parties are no longer required to file dispositive motions.

1

("RFC").² (Doc. No. 6 at 7).

- The "ALJ erred by attempting to resolve apparent conflicts between VE testimony and the DOT without developing VE testimony to provide a basis to resolve those conflicts." (*Id.*).

- The ALJ's failure to develop VE testimony and resolve apparent conflicts resulted in the ALJ's failure to meet her step five burden of demonstrating a significant number of jobs exist in the national economy that Plaintiff can perform. (*Id.*).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as

---

² The Social Security Regulations define "Residual Functional Capacity" as "the most [a claimant] can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] [R]esidual [F]unctional [C]apacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

2

to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Fourth Circuit defined "substantial evidence" as being "more than a scintilla" and "do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; and *Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). "But even under this deferential standard, we do not reflexively rubber-stamp an ALJ's findings." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (cleaned up).

"To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Id.* (citation omitted); *see also Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (finding the ALJ failed to build an accurate and logical

3

bridge from the evidence to his conclusion). Where the ALJ fails to build that logical bridge, the Court must remand for further proceedings. *See Monroe*, 826 F.3d at 189; *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 663 (4th Cir. 2017)).

### III. DISCUSSION

**A. "Low Stress Work Setting"**

Relying on *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), Plaintiff argues that the ALJ's RFC determination lacks substantial evidence as the ALJ failed to further define the meaning of "a low stress work setting," but rather defined that phrase with another "undefined" phrase, "work that is not production pace or quota based," and a paraphrase of the Agency definition of the occupational base for unskilled work, "a goal-oriented job primarily dealing with things as opposed to people." (Doc. No. 6 at 10; Tr. 31). Plaintiff argues this definition precludes judicial review.

In *Thomas*, the RFC stated in part that the claimant "is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace." 916 F.3d at 310. The Commissioner argued that "production rate" is a common vocational limitation, but the Fourth Circuit found that it is "difficult, if not impossible, for us to assess whether [its] inclusion . . . is supported by substantial evidence" without more elaboration. *Id.* at 312. The Fourth Circuit came to the same conclusion in *Perry v. Berryhill* when the ALJ "offered no explanation of her own for what she meant when she used the phrase "non-production oriented work setting." 765 Fed. Appx. 869, 872 (4th Cir. 2019) ("[W]e do not know what the ALJ intended when she used that phrase. As a result, it is

difficult, if not impossible, to evaluate" the ALJ's decision). District courts within the Fourth Circuit have found similarly. *Hernandez v. Saul*, No. 3:19-CV-337-FDW, 2020 U.S. Dist. LEXIS 105296, at *13 (W.D.N.C. June 16, 2020) (remanding where "without any explanation, the Court cannot partake in any meaningful review of the ALJ's usage of the term 'non-production work setting' and any purported limitations imposed regarding Plaintiff's moderate limitations in concentration, pace, or persistence"); *Jenkins v. Saul*, No. 5:20-CV-00117-M, 2021 U.S. Dist. LEXIS 95278, at *17 (E.D.N.C. April 28, 2021), *memorandum and recommendation adopted*, 2021 U.S. Dist. LEXIS 94696 (E.D.N.C. May 18, 2021) ("Because ALJ Preston did not further define non-production rate pace, a reviewing court cannot conduct a meaningful review of the phrase.").

However, "those cases 'did not create a categorical rule that failing to define certain terms constitutes a reversible error.'" *Ashley A.F. v. O'Malley*, No. 1:22CV983, 2024 U.S. Dist. LEXIS 18246, at *29 (M.D.N.C. Jan. 30, 2024) (citation omitted). Thus, the question becomes "whether the ALJ's decision contains sufficient context surrounding the term production pace to explain the restriction intended by the ALJ and allow the Court to evaluate whether that restriction adequately accounted for the claimant's limitations." *Uribe v. Comm'r of the SSA*, No. 5:21-cv-00160-WCM, 2023 U.S. Dist. LEXIS 21843, at *6 (W.D.N.C. Feb. 8, 2023) (cleaned up).

In *Sizemore v. Berryhill*, the Fourth Circuit held that substantial evidence supported a limitation to "low stress non-production jobs with no public contact."

5

878 F.3d 72, 81 (4th Cir. 2017). In *Perry v. Berryhill*, the Fourth Circuit noted that

> the ALJ in *Sizemore* provided additional context, explaining that the claimant could perform work only in a "low stress" setting, without any "fast-paced work" or "public contact," to account for moderate limitations in concentration, persistence and pace. . . . Those descriptors helped to explain the restriction intended by the ALJ and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations.

765 F. App'x 869, 872 n.1 (4th Cir. 2019) (citation omitted).

Plaintiff presents *Krystal Joy M. v. Saul*, No. TMD 19-2319, 2020 U.S. Dist. LEXIS 228619 (D. Md. Dec. 7, 2020) in support of his argument that the Court should remand "for the ALJ to 'establish for how long, and under what conditions, Plaintiff is able to focus h[is] attention on work activities and stay on task at a sustained rate.'" (Doc. No. 6 at 7 (quoting *Krystal M.*, 2020 U.S. Dist. LEXIS 228619 at *9–10)). Relevant to the present discussion, the RFC in *Krystal Joy M.* limited Plaintiff to "no work at a fixed production rate pace" without further defining that phrase. *Krystal Joy M.*, 2020 U.S. Dist. LEXIS 228619, at *3. The VE testified to what "fixed production rate pace" meant. *Id.* at *11. Despite this testimony, the Court found that the ALJ must independently define that term—specifically, the ALJ must determine "for how long, and under what conditions, Plaintiff is able to focus her attention on work activities and stay on task at a sustained rate." *Id.* at *12 (cleaned up) (quoting *Thomas*, 916 F.3d at 312 n.5).

Here, as in *Sizemore*, the ALJ's RFC determination adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace, and

6

included sufficient additional context to explain the restrictions intended by the ALJ. In Plaintiff's RFC, the ALJ concluded Plaintiff has the following limitations:

> He can perform simple, routine, tasks, and maintain attention, concentration, persistence, or pace to stay on-task for two-hour periods during a normal eight-hour day, as required to perform such tasks. He requires a low stress work setting, which is defined as work that is not production pace or quota based, rather a goal-oriented job primarily dealing with things as opposed to people. He can have no more than occasional interaction with the public, supervisors, and coworkers but no work with the public as a component of the job, such as a cashier, sales, or negotiations; however, incidental/casual contact is not precluded.

(Tr. 31). Unlike in *Krystal Joy M.*, the ALJ here did not use the terms "low stress" or "not production pace" alone without clarification. Rather, like in *Sizemore*, the ALJ added additional context to explain the restrictions, including how long Plaintiff could stay on task (two-hour periods)[3], and under what conditions (not quota based but goal oriented, dealing with things as opposed to people, only occasional interactions with public).[4] (Tr. 31); Accordingly, this Court finds the ALJ

---

[3] *See, e.g., Sandra G. v. O'Malley*, No. 1:23CV6, 2024 U.S. Dist. LEXIS 46557, at *13 (M.D.N.C. Mar. 14, 2024) ("Most importantly, the ALJ also specifically found Plaintiff capable of maintaining concentration, persistence, and pace for 2-hour increments throughout the workday."); *Davis v. Comm'r of Soc. Sec.*, No. 3:20-cv-00339-RJC, 2022 U.S. Dist. LEXIS 40042, at *14–15 (W.D.N.C. Mar. 7, 2022) (finding a limitation to "unskilled work of routine, repetitive nature in two-hour segments at a non-production pace meaning non-automated/non-conveyor pacing in a stable work setting" includes sufficient additional descriptors and thus is supported by substantial evidence); *Ricky F. v. O'Malley*, No. 1:23CV720, 2024 U.S. Dist. LEXIS 179061, at *12 (M.D.N.C. Sept. 27, 2024) (finding sufficient additional descriptors in an RFC determination that claimant "can perform simple routine tasks and simple work related decisions, but not at a production pace; he can interact frequently with supervisors and coworkers but never with the public; and he can adapt to occasional changes in the workplace setting").

[4] Plaintiff also argues that including a portion of the definition of unskilled work in the RFC "does not actually narrow the scope of the ALJ's use of the non-vocationally

7

applied the correct legal standards and substantial evidence supports the RFC.

**B. Apparent Conflicts Between VE Testimony and the DOT**

Regarding the VE testimony, Plaintiff makes two separate arguments. It appearing to the Court that one argument develops from the other, the Court will address them together. Plaintiff argues the "ALJ erred by attempting to resolve apparent conflicts between VE testimony and the DOT without developing VE testimony to provide a basis to resolve those conflicts." (Doc. No. 6 at 7). Plaintiff contends that when the ALJ asked the VE whether his testimony was consistent with the DOT, the VE failed to provide any testimony identifying the terms "low stress work setting," "goal-oriented," or "non-production or quota based work" as not addressed by or in conflict with the DOT or SCO. (*Id.* at 21). Plaintiff argues this failure left the ALJ unable to rely on VE testimony regarding these topics. (*Id.*).

Additionally, Plaintiff argues that this lack of development resulted in the ALJ's failure to meet her step-five burden of demonstrating a significant number of jobs exist in the national economy that Plaintiff can perform. (*Id.* at 13).

---

relevant terms 'low stress work setting' and 'work that is not production pace or quota based.'" (Doc. No. 6 at 10). Plaintiff cites no support for why use of one part of the definition of unskilled work prevents the Court from having sufficient evidence to review the ALJ's decision, but he seemingly relies on *Mascio v. Colvin*, in which the Fourth Circuit held that an ALJ fails to account for a claimant's limitations in concentration, persistence, or pace with an RFC that merely limits the claimant to performing simple, routine tasks, or unskilled work. 780 F.3d 632, 638 (4th Cir. 2015). Although the definition of "unskilled work" includes "jobs [that] ordinarily involve dealing primarily with objects, rather than with data or people," SSR 85-15, 1985 SSR LEXIS 20, at *12, the Court rejects Plaintiff's argument because the ALJ did not merely limit Plaintiff to unskilled work, but rather used a portion of this definition to further explain the RFC as discussed herein.

8

Specifically, Plaintiff argues the ALJ identified jobs which otherwise would be unavailable had the ALJ accurately developed the VE testimony because an apparent conflict exists between each job and the RFC limitation of "a low stress work setting, which is defined as work that is not production pace or quota based, rather a goal-oriented job primarily dealing with things as opposed to people" ("low stress limitation"). (*Id.* at 13–19).

The VE identified three jobs: packer/hand packager (DOT No. 920.587-018 with approximately 41,000 jobs in the national economy), kitchen helper (DOT No. 318.687-010 with approximately 280,000 jobs nationally), and warehouse worker/picker/sorter/selector (DOT No. 922.687-058 with approximately 18,900 jobs nationally) (Tr. 65). When asked whether his testimony is consistent with the DOT, the VE replied:

> It is covered by the DOT Judge. My testimony is completely in accordance with the DOT and its companion publication. The one limitation that directed me by Your Honor the -- I call it the interaction limitations. The occasional interaction with individual, general public, supervisor and coworkers. That language Judge [is] not in the text of the DOT as you well know. Based on my opinion and my testimony that's interaction limitation in the context of this hearing all my training and experience in world of work.

(Tr. 65–66). The ALJ explained in the decision that:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles* (*DOT*) and *Selected Characteristics of Occupations* (*SCO*). However, issues not specifically addressed by or in conflict with *DOT* and *SCO* such as simple, routine tasks; maintaining attention, concentration, persistence, or pace for two-hour periods; low stress work setting; non-production or quota based; a goal-oriented job; and interaction with subgroups are based on the vocational expert's training, education, experience, and knowledge of how individuals

9

perform jobs in the labor market.

(Tr. 36).

In *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015), the Fourth Circuit held that an ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT. *Pearson* elevated the ALJ's responsibility in addressing apparent conflicts. An ALJ cannot rely unquestioningly on a VE's testimony; instead, an ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Id.* at 208; *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016) (noting that under SSR 00–4p, the ALJ "has an affirmative responsibility to ask [the VE] about any possible conflict between [the] evidence and . . . the DOT" (quoting SSR 00–4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)). And even if the VE answers that no conflicts exist, the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." *Pearson*, 810 F.3d at 208–10. This means that the ALJ must identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209.

As this Court has previously held, when the DOT is silent on an issue, generally, no apparent conflict exists. *Corvin v. Berryhill*, No. 5:17-CV-92, 2018 U.S. Dist. LEXIS 132770, at *14 (W.D.N.C. Aug. 7, 2018) ("If anything, when 'the DOT is silent, an ALJ has greater leeway to rely on the experience and testimony of a VE.'" (citing *Gordon v. Berryhill*, No. 3:16-CV-130, 2017 U.S. Dist. LEXIS 195089, 2017 WL 5759940, at *4 (W.D.N.C. Nov. 28, 2017)); *accord Beasley v. Berryhill*, No. 1:17-cv-00294-RJC, 2019 U.S. Dist. LEXIS 49317, at *8–9 (W.D.N.C. Mar. 25, 2019).

Here, the ALJ questioned the VE regarding the consistency of his testimony

10

with the DOT. For the reasons discussed below, Plaintiff's objections do not warrant remand. The Court finds no apparent conflicts exist between the RFC and two of the three jobs provided by the ALJ such that the ALJ did not need to develop the VE's testimony further. Even if one of the jobs presented an apparent conflict with the RFC, the ALJ properly concluded that the remaining two jobs provided a significant number of jobs in the national economy that Plaintiff could perform.

### 1. Packer/hand packager (DOT No. 920.587-018)

First, Plaintiff argues that an apparent conflict exists between the low stress limitation and the job of packer/hand packager because it is reasonable to expect that a person packaging products coming off a conveyor belt must package a set quota per hour or shift. (Doc. No. 6 at 15–16).

Many courts in this district have found that a DOT description that includes use of a conveyor belt may conflict with an RFC requiring no production-pace work. *Martinez v. Berryhill*, No. 3:17-CV-186, 2018 U.S. Dist. LEXIS 18048, at *12–13 (W.D.N.C. Feb. 5, 2018*), aff'd sub nom., Martinez v. Saul*, 776 F. App'x 175 (4th Cir. 2019) (finding work that includes "placing materials on a conveyor belt" may present "an apparent conflict, albeit a tenuous one" with the hypothetical that Plaintiff cannot "work at a production-rate pace"); *accord Mahnken v. Comm'r of Soc. Sec.*, No. 3:21-cv-00349-FDW, 2022 U.S. Dist. LEXIS 176848, *9–11 (W.D.N.C. Sept. 27, 2022); *Johnson v. Saul*, 446 F. Supp. 3d 29, 37 (W.D.N.C. 2020) (recognizing that jobs involving conveyor belt may present an apparent conflict with no production pace work but finding no conflict where DOT description "makes no

11

mention of conveyors"); *Dowd v. Saul*, No. 1:18CV640, 2020 WL 1668700, at *1 (M.D.N.C. Mar. 6, 2020), *report and recommendation adopted,* No. 1:18CV640, 2020 WL 1660117 (M.D.N.C. Apr. 3, 2020) (citing cases).

But this Court is not persuaded that the inclusion of a conveyor belt in a job's DOT description categorically conflicts with a limitation of no production-pace work. *See Griffin v. Comm'r, Soc. Sec. Admin.*, No. 2:17-CV-644-AMQ-MGB, 2018 WL 4519339, at *8 (D.S.C. July 2, 2018), *report and recommendation adopted sub nom. Griffin v. Berryhill*, No. 2:17-CV-644-AMQ, 2018 WL 3912949 (D.S.C. Aug. 16, 2018) (finding no apparent conflict with an RFC requiring a "low stress work environment" without fast-pace production requirements and noting that "although Plaintiff appears to equate tasks involving a conveyor belt with fast-paced production requirements, courts have held otherwise"); *Vizzini v. Berryhill*, No. 1:17-cv-00233-RJC-DSC, 2018 U.S. Dist. LEXIS 163038, at *9–10 (W.D.N.C. Sept. 24, 2018) (finding that the job of inspector/hand packager (DOT No. 559.687-074) does not present an apparent conflict with a limitation to no production-rate work because nothing in the DOT description requires a production rate pace nor does "the act of producing, packaging, or assembling . . . necessitate that the job also requires a certain production or assembly-line pace"); *see also Anderson v. Comm'r of Soc. Sec.*, No. 2:14-cv-1840, 2015 U.S. Dist. LEXIS 145526, at *11 (S.D. Ohio Oct. 27, 2015), *report and recommendation adopted,* 2015 U.S. Dist. LEXIS 155866 (S.D. Ohio Nov. 18, 2015) ("The inference Plaintiff draws - that it must be [a fast-paced production] job due to the reference to a conveyor - is too weak to establish the kind

12

of direct conflict which, absent any other information, would likely require a remand.").

But even if this job presents an apparent conflict with the RFC, the ALJ identified "two [other] jobs existing in significant numbers in the national economy, and . . . the existence of one would be sufficient to justify a finding that [P]laintiff is not disabled within the meaning of the Act." *Martinez*, No. 3:17-CV-186, 2018 U.S. Dist. LEXIS 18048, at *12–13. Accordingly, the Court need not determine whether this job presents an apparent conflict with the RFC because as discussed below, the VE provided two other jobs existing in significant numbers in the national economy that Plaintiff could perform.

### 2. Kitchen helper (DOT No. 318.687-010)

This brings the Court to the second job identified by the VE. Plaintiff argues that an apparent conflict exists between the low stress limitation and the job of kitchen helper because "requir[ing] an individual to perform a variety of tasks in a commercial kitchen does not appear to be 'low stress work,'" and it is reasonable to expect that this position requires meeting a certain pace. (Doc. No. 6 at 17). Plaintiff argues that this job would, in essence, require him to meet a quota because it would involve placing dishes on a conveyor at a specific rate, polishing a set number of utensils, cleaning a set number of glasses, setting up a specific number of tables, or peeling vegetables at a specific rate. (Doc. No. 6 at 17).

The Court turns to the use of "conveyor" within the definition of "kitchen

13

helper."[5] Among other duties, the kitchen helper "[s]crapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine." DOT 318.687-010. Nothing in this description indicates that the kitchen helper must keep a certain pace, much less the pace of a conveyor belt. *See Lockaby v. Saul*, No. 4:18-CV-02056-DCN-TER, 2020 U.S. Dist. LEXIS 44003, at *32 (D.S.C. Jan. 27, 2020) (finding that no apparent conflict exists between an RFC with no production pace and a laundry sorter job requiring placing articles on a conveyor belt because "[n]othing in the laundry sorter job description indicates work at production pace"). Rather, the text indicates that a kitchen helper uses the conveyor as a means to transport items to the dishwasher, with no requirement of doing so at a specific pace.[6] Nor do any other parts of the job require working at a specific pace.

---

[5] A kitchen helper "[p]erforms any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food." DOT 318.687-010, 1991 WL 672755.

[6] *See, e.g.*, *Horton v. Kijakazi*, No. 8:21-cv-435-WFJ-SPF, 2022 U.S. Dist. LEXIS 151341, at *3 (M.D. Fla. Aug. 23, 2022) ("[T]he fact that [a kitchen helper] job[] may require tending machines or using a conveyor does not indicate the pace required by those occupations."); *Garcia v. Colvin*, No. EDCV 15-1369 AJW, 2016 WL 3268861, at *3 (C.D. Cal. June 6, 2016), *judgment entered*, No. EDCV 15-1369 AJW, 2016 WL 3226007 (C.D. Cal. June 6, 2016) ("The fact that the job of laundry laborer might

14

Accordingly, the Court finds there is no apparent conflict between the kitchen helper job and the RFC of no production-pace work, and the ALJ did not err in relying on the VE's testimony without further development. *See Griffin v. Comm'r, Soc. Sec. Admin.*, No. 2:17-CV-644-AMQ-MGB, 2018 WL 4519339, at *8 (D.S.C. July 2, 2018), *report and recommendation adopted sub nom. Griffin v. Berryhill*, No. 2:17-CV-644-AMQ, 2018 WL 3912949 (D.S.C. Aug. 16, 2018) ("Because the DOT description for this job does not, on its face, conflict with Plaintiff's RFC set forth in the hypothetical questions, the ALJ could properly rely on the VE's testimony that Plaintiff could perform this job."). This argument does not warrant remand.

### 3. Warehouse worker/picker/sorter/selector (DOT No. 922.687-058)

Third, Plaintiff argues that an apparent conflict exists between the low stress limitation and the job of warehouse worker/picker/sorter/selector because "it is reasonable to expect a job that requires the worker to supply materials to assembly or production workers would itself be performed at a production pace because the individual would have to work at a pace that enables production and assembly line workers to meet their own quotas." (Doc. No. 6 at 18). Additionally, Plaintiff argues "the worker must follow a production schedule and distribute items accordingly." (*Id.*). Plaintiff cites *Pearson* as his only support for his argument. *Pearson*, 810 F.3d

---

incorporate some conveyor belt work 'does not necessarily translate into the type of fast-paced work from which plaintiff is precluded.'" (citations omitted)); *Johnny C. v. O'Malley*, No. 3:22-cv-30111-KAR, 2024 U.S. Dist. LEXIS 16346, *52–53 (D. Mass. Jan. 30, 2024) (finding no apparent conflict between an RFC limiting claimant to "no conveyer belt or assembly line work" and the job of kitchen helper because it is "silent with respect to the pace at which the job[] must be performed").

204.

Again, the DOT description (DOT No. 922.687-058) does not include any mention of a production pace, let alone any required pace. Although the DOT description states the job may involve reading a production schedule and transporting items throughout a production area, the description does not indicate that the worker must do so at a certain pace. A "requirement read in by Claimant is insufficient to show an apparent conflict between the VE's testimony and the DOT." *Morris v. Berryhill*, No. 4:17-CV-106-D, 2018 U.S. Dist. LEXIS 126930, at *18 (E.D.N.C. June 1, 2018), *report and recommendation adopted, Morris v. Berryhill*, No. 4:17-CV-106-D, 2018 U.S. Dist. LEXIS 126494 (E.D.N.C. July 30, 2018) (finding no apparent conflict between an RFC limiting claimant to no "high volume production quotas and/or fast paced assembly line work" and the jobs of housekeeper and merchandise marker because the DOT descriptions do not include any production pace requirement). Accordingly, Plaintiff's objection does not warrant remand.

In sum, even if an apparent conflict exists among the RFC and the job of packer/hand packager, the ALJ did not err in his development of the VE's testimony regarding the remaining two jobs, specifically, kitchen helper (with approximately 280,000 jobs nationally) and warehouse worker/picker/sorter/selector (with approximately 18,900). The ALJ properly concluded that there was a significant number[7] of those two jobs in the national economy that Plaintiff could perform.

---

[7] *Hyatt v. Apfel*, No. 97-2225, 1998 U.S. App. LEXIS 18193, at *9 (4th Cir. Aug. 6,

16

Case 3:23-cv-00292-RJC    Document 10    Filed 02/05/25    Page 16 of 17

Thus, the ALJ's step-five finding is supported by substantial evidence.

## IV. CONCLUSION

For the reasons discussed herein, the ALJ applied the correct legal standards and his conclusion that Plaintiff was not disabled is supported by substantial evidence.

**IT IS, THEREFORE, ORDERED** that:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

Signed: February 4, 2025

Robert J. Conrad, Jr.
United States District Judge

---

1998) (unpublished) ("We previously have found that as few as 110 jobs constitute a significant number." (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979)).